AMERICAN BELL TEL. CO. *v.* KITSELL.

*(Circuit Court, S. D. New York.* July 10, 1888.)

PATENTS FOR INVENTIONS—INFRINGEMENT—RELIEF—DESTRUCTION OF INFRING-ING ARTICLE.

In a suit for infringement of patent, it not appearing that defendant had *mala fide* and clandestinely set about to appropriate the patented invention, and it not appearing probable from his past conduct that he would attempt to use the infringing articles in the future, and there being nothing to indicate that the infringing articles could be readily used surreptitiously, to the injury of complainant, defendant will not be required to deliver them over to complainant, to be destroyed, in addition to the relief ordinarily granted in such suits.

In Equity. On motion for additional relief.

*James J. Storrow,* and *Henry G. Atwater,* for complainant.

It is familiar that a court of equity, besides declaring a deed void, may (and usually does) order the physical thing to be delivered up and physically canceled, as a more sure and certain way of making sure that its decree is obeyed, although in a sense this deprives the defendant of his property in the paper. But *de minimis non curat lex.* In this case it appears from the confessed allegations, and is indeed obvious from the character of the instruments— (1) That if they exist, there is great danger that they may go into other hands, where they will get into secret use, and cannot be traced. This difficulty does in fact continually arise. (2) That the physical thing is of no value except as a means of infringing the patent. It is not worth the labor of taking it apart to sell for junk. (3) That it is of no value because, being made as an infringement, it cannot be used after the patents have expired. Moreover, the rule that the infringing thing under such circumstances is to be destroyed, is well settled by the supreme court, and in the English courts of equity.

*Publication cases:* In *Prince Albert* v. *Strange,* 2 De Gex & S. 652, (1849,) the plaintiff had etched certain plates for his amusement. The defendant obtained the plates surreptitiously, printed certain impressions from them, and issued a catalogue of them. The court restrained him, and ordered both the impressions and the catalogue to be delivered to the clerk to be destroyed. In *Drury* v. *Ewing,* 1 Bond, 554, Judge LEAVITT ordered the plates and the prints to be delivered to the clerk. This was not under the penalty clauses of the statute, (the suit was in equity,) but was within the equity power of the court.

*Patent Cases: Birdsell* v. *Shaliol,* 112 U. S. 487, 5 Sup. Ct. Rep. 244: "But an infringer does not, by paying damages for making and using a machine in infringement of a patent, acquire any right himself to the future use of the machine. On the contrary, he may, in addition to the payment of damages for past infringement, be restrained by injunction from future use, and, when the whole machine is an infringement of the patent, be ordered to deliver it up to be destroyed;" citing *Needham* v. *Oxley,* 8 Law T. (N. S.) 604, (1863;) *Frearson* v. *Loe,* L. R. 9 Ch. 67, (1878.) In *Frearson* v. *Loe* that very eminent patent law judge, Sir GEORGE JESSELL, then M. R., decided that the plaintiff's patent had been infringed, and said: "I also order the defendant either to deliver up to the plaintiff, or to destroy in his presence, any machine in his possession or power." In *Needham* v. *Oxley,* 8 Law T. (N. S.) 604, (1863,) it appeared that the defendant's large machine infringed only by the presence of a particular combination in one part, and that the machine could

be altered and used so as not to infringe. On this ground alone, the court (V. C. Sir W. PAGE WOOD) declined to order the destruction of the whole machine, saying that "the defendant might still use for other purposes the several parts of his machine." But the court ordered that "they should be marked in some way, so as to enable the plaintiff at any time to follow them." In *Betts* v. *De Vitre*, 34 Law J. Ch. 289, the same judge, in a case where those peculiar circumstances did not exist, ordered that the machines be destroyed in the presence of the plaintiff. Infringing instruments, made during the life of a patent, cannot be used after its expiration. The complainant has the exclusive right to make, use, and sell, and this right cannot be adequately protected if infringing devices made during the running of the patent can be afterwards used or sold. That would allow an illegally made device to be beneficially enjoyed by the infringer. A patentee's complete protection demands that no one should be able to get any benefit from an article made in violation of his rights, although it is not sold or used in violation of them. This point has been frequently adjudged both in England and this country. *Crossley* v. *Gas-Light Co.*, 1 Webst. Pat. Cas. 119; *Boring Co.* v. *Sheldon*, 18 Blatchf. 52–146, 2 Fed. Rep. 353; *Mower Co.* v. *Harvester Co.*, 24 Fed. Rep. 739; *Belting Co.* v. *Magowan*, 27 Fed. Rep. 111.

*Philip J. O'Reilly*, for defendant.

Such provision is contrary to an elementary principle of equity procedure. The complainants ask that the defendant's telephone apparatus be ordered to be delivered to them "to be destroyed." In other words, they ask that the defendant's property be forfeited. It is familiar law that such an order will not be granted by a court of equity. *Stevens* v. *Gladding*, 17 How. 447; *Stevens* v. *Cady*, 2 Curt. 200; *Chapman* v. *Ferry*, 12 Fed. Rep. 693. Such a provision is not included in the statute that provides for recoveries in infringement suits. In an action at law plaintiff can recover damages, and the court may enter judgment on the verdict "for any sum above the amount found by the verdict as the actual damages sustained, * * * not exceeding three times the amount of such verdict." Rev. St. U. S. § 4919. In suits in equity, Rev. St. § 4921 provides that the court shall have power (1) to "grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent on such terms as the court may deem reasonable;" (2) to decree an account of defendant's profits and assessment of complainant's damages, and to increase such damages as in an action at law. This is all that the complainants are entitled to ask. Indeed, this is all the court can decree, for such is all that the law has empowered its chosen tribunal to grant. *Expressio unius exclusio alterius. Bloomer* v. *McQuewan*, 14 How. 539; *Chapman* v. *Ferry, supra.*

Such provision would in effect re-enact a statute which was abolished in 1793. The legislation on the subject of patents shows that ever since 1793 congress has limited recoveries to damages, profits, and injunction. (*a*) The first act, that of 1790, by section 4 provided that the defendant should pay such damages as should be assessed by a jury, and also forfeit the infringing articles. (*b*) The second act, that of 1793, repealed the act of 1790, and by section 5 provided that the defendant should pay a sum "equal to three times the price for which the plaintiff" had licensed others. (*c*) The third act, that of 1800, repealed section 5 of the act of 1793, and provided that the defendant should pay to the patentee "a sum equal to three times the damages sustained by him." (*d*) The fourth act, that of 1836, repealed former acts, and, by section 14, empowered the court to render judgment for any sum above the amount found by the verdict as the actual damages sustained by the plaintiff, not exceeding three times such amount. (*e*) The fifth act, that of 1870, repealed the former acts; and by section 59 re-enacted section 14 of the act of

1836. (*f*) The sixth and present act is that of the Revised Statutes, which repealed all former acts, and by section 4919 re-enacted section 59 of the act of 1870. It is undeniable that the court in an action at law would have no power to order the surrender of the articles. And so it is also in a suit in equity. The jurisdiction of the circuit courts in equity over the subject of patents did not exist until the act of 1819. *Root* v. *Railway Co.*, 105 U. S. 191–193. The provisions of the act of 1819 have been continued in the acts of 1836, 1870, and the Revised Statutes, § 629, with no addition other than the provision for damages and profits, enacted in the act of 1870, and in the Revised Statutes, and that no forfeiture can be decreed thereunder. *Stevens* v. *Gladding*, 17 How. 447.

Such a provision would contravene the fifth amendment to the constitution, which ordains that no person "shall be deprived of life, liberty, or property without due process of law." *Bloomer* v *McQuewan, supra; Patterson* v. *Kentucky*, 97 U. S. 505; *Webber* v. *Virginia*, 103 U. S. 347; *In re Brosnahan*, 18 Fed. Rep. 63.

Such a provision would in effect make new claims for the patents in suit. The claims of the patents are for combinations, which claims, the law says, are for the combinations, and nothing less. Obviously, a destruction of the instruments would destroy both the combinations and the elements which compose them. Surely, for this reason alone the decree should be refused. Even in England, where the court sometimes asserts its power to order the destruction of infringing articles, it is held that such an order will not be granted where the patent is for a combination, for the reason that the defendant might still use for other purposes the several parts of his machine. *Needham* v. *Oxley*, 8 Law T. (N. S.) 604.

WALLACE, J. In refusing to insert a provision in the decree that the defendant deliver over the infringing instruments to the complainant to be destroyed, notwithstanding the bill, which has been taken as confessed, contains a prayer, among others, for such relief, the refusal is placed not on the want of power of the court to make such a decree, but upon the want of any apparent necessity for making one differing from those ordinarily granted by the courts of this country in suits for the infringement of patent rights. Where the court has power to decree, necessarily it has power to carry its decree into effectual execution; and a court which does not hesitate to enforce its process by attachment and imprisonment of the person, and by sequestration of the property of parties, in order to compel obedience, would not hesitate from any consideration of want of power or propriety to order property to be destroyed which has been created in defiance of the rights of another, and is being used in further encroachment upon such rights, whenever it might be essential to the ends of justice that this should be done. It is common in England to include such a provision as is asked for in the decree. *Frearson* v. *Loe*, L. R. 9 Ch. 67; *Betts* v. *De Vitre*, 34 Law J. Ch. 289; *Needham* v. *Oxley*, 8 Law T. (N. S.) 604. The power of the court to make such a decree is recognized in *Birdsell* v. *Shaliol*, 112 U. S. 485, 487, 5 Sup. Ct. Rep. 244. An example in close analogy to such a decree is found in the case of *Emperor* v. *Day*, 2 Giff. 628, where Kossuth, who assumed to be acting as president of Hungary, chosen by the estates of the nation, had caused notes to be prepared, intending to issue them at some future time as the public paper money of the nation, when lawfully sanctioned by

the diet; and the bill filed against him prayed that the defendants deliver to the plaintiff, to be destroyed, the plates and the documents printed therefrom. The court decreed according to the prayer of the bill. In this country the common injunction against making, vending, or using the infringing article has generally been found ample to protect the owner of a patent-right; and it is not desirable to put in motion any of the extraordinary machinery of the court to attain ends which its simple and familiar process is fully adequate to accomplish. If it appeared that the defendant had *mala fide* and clandestinely set about to appropriate the invention patented, or if it appeared probable from his conduct in the past that he would attempt to use the infringing article in the future, or even if there were any peculiar circumstances to indicate that the infringing telephonic instruments could be readily used surreptitiously to the injury of the complainant, the exceptional decree sought might be granted. As nothing of this kind appears, the complainant must be content with the remedy given to ordinary suitors. The application savors of oppression.